JOHN W. GRIFFIN v. REFUGE COTTON OIL COMPANY.

[46 South. 946.]

BROKERS. *Suit for commissions. Evidence. Question for jury.*

> Where in a suit for commissions, brought upon a contract by which
> defendant agreed to pay plaintiff a sum above the market price
> as commissions on each ton of cotton seed which he might ship
> to it during a season, the testimony tended to show that quan-
> tities of seed were delivered by plaintiff to a designated person
> to be shipped to defendant and that such person was defendant's
> agent to receive and transport them, but that, by defendant's
> connivance in an effort to escape the commissions, the agent de-
> livered them to another company, affiliated in business with de-
> fendant, it was error to exclude such testimony and instruct for
> defendant as to seed delivered to the other company.

FROM the circuit court of Warren county.

HON. JOHN N. BUSH, Judge.

Griffin, appellant, was plaintiff in the court below; the Cot-
ton Oil Company, appellee, was defendant there. From a
small judgment in plaintiff's favor, much less than the sum de-
manded in the declaration, he appealed to the supreme court.

Griffin sued the Refuge Cotton Oil Company for commissions
claimed to be due on shipments of cotton seed. The declaration
alleged that Griffin entered into a verbal contract with the Ref-
uge Cotton Oil Company, the company acting through its agent
one Hornthall, whereby it was agreed that, for all seed shipped
by plaintiff to the Refuge Cotton Oil Company, said company
would pay plaintiff a commission of $1 per ton over and above
the market price of seed at the shipping point; that this agree-
ment was afterwards reduced to writing and signed by the Ref-
uge Cotton Oil Company, acting by one Durham, its manager,
at Vicksburg, Miss., that, in accordance with the terms of said
agreement, plaintiff shipped ninety tons of seed to defendant,
delivering same on boat to Hornthall, and received payment for

same; that thereafter during the season a number of shipments were delivered by plaintiff to defendant, Hornthall acting for defendant in receiving the seed, but that, without plaintiff's knowledge or consent, defendant, acting through Hornthall, its agent, diverted the subsequent shipments of seed and delivered them to the Southern Cotton Oil Company of New Orleans; that, at the close of the season, plaintiff had delivered to defendant, Hornthall receiving them for defendant, eight hundred tons of seed; wherefore, in accordance with the terms of the contract, he demanded commissions, which were refused. Defendant denied the agency of Hornthall, and set up that the contract between Griffin and defendant only provided for commissions on such seed as were delivered to defendant, and that there was no liability on defendant to pay plaintiff commissions on seed delivered to the Southern Cotton Oil Company.

On the hearing the plaintiff offered evidence which tended to show that Hornthall, assuming to act for defendants, had made, or attempted to make, a number of similar contracts for it with other parties, and that defendant had received and paid for three shipments of seed from plaintiff, delivered to Hornthall for it, and attempted to prove other acts tending to show agency. The evidence also tended to show that Hornthall was acting as agent of both companies, and that it was with the consent of the Refuge Cotton Oil Company that the seed were diverted to the Southern Cotton Oil Company, without knowledge or consent of plaintiff; and that as a matter of fact both oil companies were owned by the same corporation and controlled by the same stockholders, and that the diversion of these shipments of seed was done by defendant's connivance in order to defeat plaintiff's claim for commissions. Defendant placed Hornthall and Durham on the stand as witnesses, and both of them denied Hornthall's agency or authority to enter into a contract with plaintiff. Thereupon the court instructed the jury not to allow plaintiff any commissions on seed delivered to the Southern Cotton Oil Company, but that they could allow

commissions on the seed delivered to the Refuge Cotton Oil Company.

*Harper & Potter,* for appellant.

It seems to us too clear for extended argument, that the court erred in excluding from the jury evidence as to Hornthall's agency. It is true that Durham and Hornthall both swore that he had no authority to receive seed for the defendant. But they likewise swore positively that he had never been the agent of the defendant, in the face of the fact that he made the very contract here sued on, which had been accepted and ratified expressly by defendant; that he had made other contracts with other planters for defendant, with its knowledge and consent; that he had received three shipments of seed from plaintiff under the contract, and delivered them to the defendant, who had accepted and paid for them under the contract here sued on; that it was the custom of all oil mills to have agents to receive their seed at the landings; and that this defendant, though a large buyer of seed, had no other person as agent on the river during that season; that it never made complaint to plaintiff that it was not receiving seed in accordance with its contract, and never brought any action against plaintiff or complained of any breach, and never notified plaintiff at any time that Hornthall was not its agent, though he had so repeatedly acted with its knowledge, consent and approval. Surely, all of this was sufficient to require the question of whether the defendant had held out Hornthall to be its agent, to such an extent as to justify plaintiff in so dealing with him.

But we go further, and say that it is our conviction that a careful reading of the testimony of Durham and Hornthall, themselves, will convince any fair minded man that Hornthall was in fact, the agent of both the Refuge and the Southern Cotton Oil Companies, in spite of their positive statements to the contrary; that these two concerns were twin sisters, of a common parentage, and owned and controlled by the Virginia

Carolina Chemical Company; that the form of contract here sued on was entered into, secretly, for the purpose of defeating a secret agreement with other oil companies; and that by a connivance between each other in diverting seed first from one, and then from the other, and using the same man as agent of either, as the exigencies of the case required, these two oil mills sought to evade a plain obligation to pay commissions as agreed. We would be willing to rest our case upon the testimony of Hornthall and Durham, and we invite the court's attention especially to the character of evidence given by them. The testimony ought to have been submitted to the jury, who would have given it the true weight and effect it deserved.

*Smith, Hirsh & Landau,* for appellee.

Nothing is better settled in the law than that one dealing with an agent expressly appointed to do a particular act, must inform himself of the extent of the authority conferred, and must see to it that the act done is within the authority. *Everman v. Herndon,* 71 Miss. 830, 15 South. 135; *Bank v. Cameron,* 3 Smed. & M. 609; *Brown v. Johnson,* 12 Smed. & M. 398.

WHITFIELD, C. J., delivered the opinion of the court.

The court erred in excluding from the consideration of the jury the evidence as to the seed which were delivered to the Southern Cotton Oil Company, or to Louis Hornthall for that company. All this testimony should have gone to the jury under proper instructions. The evidence as to Hornthall's agency should have gone to the jury—all of the evidence on this point. The instruction given for the defendant was erroneous. The whole case should have gone to the jury, for them to settle the questions of fact according to their view of the testimony.

*Reversed and remanded.*